Gentlemen, our first case for argument is Sonnenberg vs. Farner, Mr. Cueto. Good morning. My name is Christopher Cueto and I'm here to ask this court to overturn the decision of the district court which dismissed my client's case pursuant to a 12B6 motion. What the case presents, frankly, is whether or not Illinois' anti-gambling statutes, which clearly on their face seem to indicate a genuine hostility to gambling, illegal gambling, whether or not those statutes have any saliency in today's modern world of internet gambling and especially with internet gambling websites. Is Illinois somewhat unique in this compared to the anti-gambling statute? Candidly, they are unique in this, your honor, but from my take, Kentucky has laws like this and there are other laws that are pretty similar around the United States, but Illinois' laws are fairly unique, I'll grant that. As Illinois is in some other states. Thank you, Judge, absolutely. My client basically alleged that he played poker on the defendant's internet websites, either Poker Start or Full Tilt, over the internet, that he established an account with these defendants and that he would play poker, and that's what his allegations were, that he would play poker, including in tournament poker games that were hosted by the defendants. He alleged, both of them, alleged various time frames when they would have played, from basically 2004 to 2011, and that in those times he lost more than $50. The $50 is, of course, important because for the loss recovery statute, that's the statutory minimum threshold for a loss that can later be sued upon. The district court, in error in my opinion, obviously I'm here, said that there wasn't an adequate pleading of that. Under the relevant statute, notice pleading, we all know, doesn't suffice anymore. But there has to be detailed factual allegations, or detailed enough that a claim is plausible on its face, and that the allegations when taken together, and of course accepted in the light most favorable to the plaintiff is true, allows one to draw on reasonable inference that the defendant is liable for the misconduct alleged. Candidly, I think that we did this. Some of the things that Judge Herndon thought that we should have pled are simply unavailable to us at this time. For example, the notion of other players in the game. I'm not sure why that's necessarily relevant because we're not suing them, and they're not defendants here, but oftentimes in these illegal poker games, players play anonymously or through the use of the elixir. Doesn't the statute allow a suit against the winner of the bet? It does. Rather than the gambling site? It does, Judge. Of course, I think that the host of the site is a winner under the laws of recovery. Why? I don't understand. Because they host the game, Your Honor. Yeah, I know. They're running a gambling operation, but they don't win the bets, right? They're winners and losers, and they're just, you know. They take a rake. Pardon? They take a rake from each pot. They take an amount from each pot. Yeah, I know. They're financing. They have to finance their operation, right? But that doesn't mean they're winning bets. They don't care who wins. There's a winner and a loser. Whoever wins or loses, there is a fee paid to the gambling house, and I don't see how that makes them a winner or a loser. They're a middleman. Well, they are, Your Honor, but the fact that they might not participate in the risk of the game isn't a requirement under the statute under Pierce. But they're not winning or losing. Doesn't the statute talk about the winner? It does, Judge. It does. Against the winner. It's a civil action against the winner. The gambling company is not the winner. Your Honor, that question was decided, I think, in Pierce v. Foote, which was an 1885 case that involved options contracts. What if the Bears lost a football game in the Bears stadium? Would you say the Bears stadium was the winner or the loser? No, Your Honor. But the distinction is they don't have an account from the players. The Bears don't. They don't have names. They don't host these various tournaments and other things like this where it looks like they're a much more participant in the illegal activity. And the Bears game itself is a legal activity, playing the football game. But your theory is that the stadium is an actual participant in the game. Nobody thinks that. I don't think that for the Bears stadium, Your Honor. The fact that somebody could bet on the outcome of this case or something. People bet on all sorts of things. But to host an illegal gambling site. I think we can. Judge Herndon took judicial notice that the federal government shut down these sites previously. So when I call them illegal, I think I have some grounds to do so. Well, they may be violating some other law. I'm just saying they are not the winner. Your theory is that every time someone gambles in some gambling joint, the gambling joint is the winner. If they take a rake, Your Honor. If they take a proportion of the gambling proceeds. Well, they have to finance their operation, right? No, what they have to do is obey the law and not participate in illegal gambling. There's no question that this site would be illegal, even under Illinois law, not just federal law. Well, if they could be violating the law, the question is whether they come under a statute which says gambling losses recoverable against winners. It says winners against the winner. And the gambling house is not the winner. Your Honor, in Pierce v. Foote, the Illinois Supreme Court, that involved brokers' contracts for options contracts. And in that particular case, the broker, again, took the bet on the option contract one way or another. And the Illinois Supreme Court held that that particular case, that the broker did fit within the statute and was a winner. And they used basically agency law that it didn't matter whether you paid money to the broker or to the bearer of trade, ultimately. Paying to either principal is in law paying to the winner. And they found it instructive in that particular case that the broker would pay both wins and losses to the various participants. In that particular case, the broker seems an awful lot to me like Full Tilt or Poker Stars here. While they don't take any bet necessarily on the action, they still handle the bet, do this, do that with it. And therefore, when options contracts used to be illegal under these statutes, they were deemed to be a winner under the statute. I think that's true here, too. But they don't take any risk, though, do they? No, the broker did not take any risk, Judge. That's candidly why I think it's beneficial to my case, Your Honor. The broker didn't accept any risk necessarily in that particular regard. And just like Full Tilt or Poker Stars doesn't necessarily play a hand or bet on a hand. But we know. We weren't able to get into discovery whether they sponsored players or other things. But just by hosting the website, it seems to me, and by taking portions of the gambling proceeds, they're a winner under the statute. They win my client's money, even though they don't have to participate in the risk. That's the portion under the Lost Recovery Act. There are other aspects of Illinois' anti-gambling statutes as well that were brought in this case. And the Illinois anti-gambling statutes, they do provide for a Class A misdemeanor, for a whole range of what they call illegal Internet activity. The last one, Parent 12 to that, which was, I believe, adopted in 1999. So even though this is a pretty unique case, the legislature has continued to update it, so to speak. They made hosting an illegal Internet gambling website illegal. And if Judge Herndon's order stands here today, then there would be no remedy for that beyond the Class A misdemeanor. Now, Illinois law does provide for a four-part test on when a criminal statute can be used in a civil context. In our brief, we think that we fit all A1 through 12. What if this gambling site simply charged a flat fee rather than a percentage of winnings? Would that alter your case? I don't think that changes the way I see the case, Judge. Well, you kept talking about a rake. Now you say it's irrelevant. I'm sorry, a rake. You kept talking about the rake. Now you say it's irrelevant. No, my understanding is... Well, my question is, if they simply charge a fee, not a percentage of winnings or anything like that, just an entry fee, do you regard that as something you can, the loser of the gamble can collect against the gambling site? I'm not certain that isn't what occurred here. I'm ashamed to say that. I'm not asking you that. I'm asking you a hypothetical question. The gambling site charges a flat fee, not a percentage of the winnings or anything like that, and is it your view that whoever loses the bet can sue the gambling site for that fee, for the fee it paid to be allowed to bet? I do believe that, Judge. Even if it's a flat fee, and that might very well have been the case here. Just by hosting the site and deriving income from the games of chance, which are illegal themselves, then it seems to me that they participate... But in my example of the fee, they're not obtaining money from the winnings. But they're still obtaining money from the loser, and that's why I think it fits within the statute. Is this an illegal gambling site? In this case, yes, Your Honor. Isn't there a remedy against an illegal gambling site? I think that depends on how this case is decided, candidly. Well, I don't understand. This is an illegal enterprise, and there are no sanctions against it? Well, the federal government shut them down. The only criminal sanctions under Illinois law is a Class A misdemeanor. Was it against the law in Illinois, or just the federal rep? It's against the law in Illinois, Judge. You're into your rebuttal time. I understand that, Your Honor. I would waive. Thank you, Judge. Okay, thank you, Mr. Cueto. Mr. Ifrah? Thank you, Your Honor. I may have to take up any questions or start with our own highlights. Well, I ask this in general, but how does this compare to other states' anti-gambling laws? Are there a lot of them? So every state in the country has anti-gambling laws. Most of them have them read right into their state constitutions, usually somewhere around Article II. So they're pretty high on the priority list, at least they were back in the day. Some states criminalize gambling much more significantly, and some states specifically criminalize poker. So there's only a few states that do that. Illinois statute is about average. The one difference is that Illinois statute doesn't draw a line between games of chance and games of skill. That's very unusual. Most states, 38 states, draw a distinction between games of chance and games of skill, prohibiting games of chance and permitting games of skill. There's something going on right now, I think, as far as television ads with regard to games of whether it's chance or skill. Right, and in fact, between DraftKings and FanDuel, and FanDuel, in fact, was a defendant in one of these cases in the Northern District of Illinois here in Chicago, and that's one of the cases that we cite to since it came out favorably for us. How is poker classified, skill or chance? Well, certainly the operators of the sites classify it as skill. In the Southern District of New York criminal case that was being discussed earlier, that issue never got to trial. The judge in that case held that he wasn't going to hear evidence on whether it was chance or skill because it was strict liability statute, so it didn't matter because intent was irrelevant. There have been some state cases that have held poker is a game of skill, which I certainly believe, but a lot of those cases have been reversed somewhat recently. Virginia, South Carolina. There is a lot of skill involved in poker. Yes, I mean, there hasn't really been a perfect factual case to present that issue. Judge Weinstein in the Eastern District of New York two years ago held that poker is a game of skill and threw out a criminal indictment. The Second Circuit reversed, but when they reversed, they didn't address the skill issue because they said it was irrelevant. Under 18 U.S.C. 1955, they held poker is one of the enumerated games under the Illegal Gambling Business Act, even though it's not specified. So they were able to reverse the indictment on that grounds. But Illinois doesn't make this distinction, you're saying? Correct. Illinois prohibits games of chance or games of skill, and the Lost Recovery Act statute, which is that issue here, clearly would prohibit online poker, regardless of whether it was a game of skill. Is there any other remedy that a loser might have? Sure. Besides suing the winner? Well, I think they can sue the winner. I don't think they sued... Well, that seems to be explicit in the statute. Right. I mean, I just wanted to point out I don't think they sued the winner in this case. They could have sued the winner. Other remedies? So this case is sort of treated like some sort of civil in rem case where they seem to be going after the money, and they seem to be saying that the money somehow gets tainted when it gets introduced into the system. Isn't this just a question of definition, whether the people they sued are winners or whether they're just stakeholders or just hanging around? Right. I mean, that is the key question is whether the people they sued are winners. That's the only question, isn't it? If they are classified as winners, they lose. If they are classified, they get the wrong defendant. Well, I'm not sure that's the only question because even if the operator was a winner, I still think they have basic competing requirements. In the sense of a gambling winner. Right. But I still think they have basic pleading requirements that they didn't satisfy that they, under 8b, that still render their complaint defective. In a general sense, the video company would, the video people who are putting it on the video are winners, too. So are the newspapers that publish the results and things like that. Right. Anybody who benefits from it is, in some form or another, a winner. And the federal government looks at it like that when they initiate a forfeiture proceeding, for example. So money that gets introduced into an illegal operation, all of it would become tainted and become subject to forfeiture. And to answer your question on that point, that is something that was available. There was a civil forfeiture case in the Southern District of New York, and Judge Herndon, in his district court opinion here, did reference the fact that the plaintiffs could have filed a claim in the civil forfeiture proceeding in the Southern District of New York, and they could have asked for their money back. In fact, the state of Kentucky, which was referenced here, was represented by some contingency fee lawyers, and they took their Lost Recovery Act case to the Southern District of New York as a civil forfeiture claim. So New York seized about 700, almost a billion dollars, let's say. And at that time, and that was all done 15 months before this complaint was filed. So at that time, a complaint process was open and was available to the public. And I can't say everyone, but I can say that there was about half a billion dollars paid out from that forfeiture. And as a result of that, there were numerous, numerous claims. And the Southern District of New York set up a monitor and set up a claims process. And Judge Herndon noted in his opinion that the plaintiffs in this case did not take advantage of that process. So yes, there is a process available, and at least there was very specifically a process available in this case. Anything further? No, Your Honor. Well, let me take that back real quickly. On Pierce. You have plenty of time. There was a discussion about Pierce. And Your Honor, you asked whether or not there was any risk in that case to the broker. And I believe the answer was no. And that's actually incorrect, I believe. In that case, the broker was actually gambling his client's money. That's why, in that case, the Supreme Court recognized that the entity was responsible. And of course, since that time, the CFTC has passed numerous registration and broker requirements that would prevent a fraud from being committed like that by a commodities broker. But in that day, almost over 100 years ago, there was no such registration requirement. He took his client's money, gambled it, and then of course he shared the risk. And of course, the theory of agency in that case was factually different. There were two subsequent cases, which have been the law in Illinois for over 100 years, which both Judge Herndon and, in our briefs, we rely on Rainey and Holmes. Those two cases were court of appeals cases, not Supreme Court cases. But clearly, in both those cases, the court adopts the type of reasoning that we've been discussing here regarding who is a winner, and very clearly says that the winner must be a player. And of course, that seems to be the logical and plain meaning of the statute. And the operators in this case were not players. The one last thing I'd just like to point out, even if the court were to indulge the arguments here being presented as to a winner, there's the particularity and specificity of the complaint. Judge Herndon spent some time discussing where is the who, what, where. And what this case, which is similar to the FanDuel case, which was also dismissed, what's presented in this case is whether or not you can simply track, in a post-Iqbal world, whether you can simply track the elements of the offense and say, I am a loser, I spent over $50, and I lost the money. It seems the plaintiffs in the case below point out that it seems a little bit harsh to hold them responsible for more than that. But the reality is they had three chances below. And they even filed an affidavit from both of their clients. And despite three chances, they weren't able to answer questions that they knew were relevant. Specifically, when did they lose that money, and who did they lose it to? In the briefs before the court today, they're suggesting that it's an impossible feat to determine who they lost the money to. Well, that's just simply not true. And of course, these facts aren't in the record. But when you play on an online poker site, you have to have a name. It may not be your name, but you have a name. And so does everyone else in the poker room. And so it's just simply not true that they couldn't have identified more. And what happens in a lot of these cases is our clients, the poker clients, are recipients of subpoenas that ask them to identify who was Johnny Blue, who was Rusty 16. And when we identify those people, which we're required to do pursuant to court subpoenas, you have your winners. And unless the judges have any more questions, that's all we have. OK, thank you, Mr. Ifrah. Mr. Quato? How much time does he have? OK. Thank you, Judge. We didn't get into any discovery as to the identity of who the other players and the other winners may have been. That was foreclosed. This case was decided on the pleadings. I would just read this comment from Pierce. The suggestion of the book is that you're not interested in who the winner is. If the winner isn't the defendant, you're not planning to sue the winner. Well, we could, Judge, if we knew who they were. Pardon? If we knew actually who they were, we could sue them. But we didn't know because, as counsel just said, it's commonplace to use fictitious names. I guess maybe a John Doe defendant. Maybe, perhaps, that was decided in Langone the other way. But we never were able to. The subpoena that counsel talks about, which I can only presume is a federal grand jury subpoena, I'm not privy to that, that would identify who these other players were. Well, did you ask the gambling site to tell you who the winner was because you wanted to sue under the statute? We tried to engage in discovery for that, Your Honor. But we didn't get very far. Well, before you engage in discovery, you can just ask them, right? Well, I guess perhaps we should have, Judge, but we didn't. The only other point is, aside from the Lost Recovery Act, the idea that you can still sue under the other portions of the Illinois anti-gambling statute, in Illinois law, and this was added in 1999, anyone who knowingly establishes, maintains, or operates an internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the internet or to make a wager upon the result of any game, contest, political nomination, appointment, or election by means of the internet, that's illegal under Illinois law. But the statute you're suing under, it just creates a remedy against the winner. Well, no, we also sued under this one, too, Your Honor, to try to apply it civilly, Judge, what I just read. That's beyond the Lost Recovery Act, counsel. I think my time is up. Okay, well, thank you very much to both counsels. Next case for argument, United States v. Lawson.